# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ESTATE OF EITAM HENKIN, *et al.,* )<br><br>*Plaintiffs,* )<br><br>v. )<br><br>THE ISLAMIC REPUBLIC OF IRAN, *et al.,* )<br><br>*Defendants.* ) | Civil Action No. 1:19-cv-01184-RCL |

## <u>ORDER ADOPTING SPECIAL MASTER'S REPORT AND RECOMMENDATION AND GRANTING FINAL JUDGMENT</u>

Upon consideration of Plaintiffs' Motion to Adopt Special Master's Report and Recommendation and for Entry of a Final Judgment (ECF No. 77), and the entire record herein, the Court hereby **GRANTS** the Motion as to all Plaintiffs—Estate of Eitam Henkin, Estate of Naama Henkin, M.H.H., N.E.H., N.Y.H., and I.Z.H.—and against all Defendants—Islamic Republic of Iran, Islamic Revolutionary Guard Corps, Iranian Ministry of Intelligence and Security, Bank Markazi Jomhouri Islami Iran, Bank Melli Iran, Bank Saderat Iran, and the Syrian Arab Republic. With a Memorandum Opinion consistent with this Order forthcoming, the Court holds as follows:

1. Plaintiffs are awarded at total of $52,049,000 in compensatory damages in the following amounts against all Defendants, jointly and severally:

    a. Estate of Eitam Henkin: $2,549,000.00 in economic damage and $4,750,000.00 in pain and suffering damages for a total compensatory damages award of $7,299,000.00;

    b. Estate of Naama Henkin: $4,750,000.00 in pain and suffering damages;

    c. M.H.H.: $10,000,000.00 in solatium damages;

    d. N.E.H.: $10,000,000.00 in solatium damages;

    e.  N.Y.H.: $10,000,000.00 in solatium damages; and

    f.  I.Z.H.: $10,000,000.00 in solatium damages.

2. Plaintiffs are awarded a total of $179,048,560 in punitive damages against all Defendants, jointly and severally, consisting of the following amounts:

    a.  Estate of Eitam Henkin: $25,108,560;

    b.  Estate of Naama Henkin: $16,340,000;

    c.  M.H.H.: $34,400,000.00;

    d.  N.E.H.: $34,400,000.00;

    e.  N.Y.H.: $34,400,000.00; and

    f.  I.Z.H.: $34,400,000.00.

3. This Order is the final judgment for Plaintiffs to be served on all Defendants pursuant to 28 U.S.C. § 1608(e).

4. The Clerk of Court is directed (1) to not issue individual judgments for these claims, as this Order shall constitute that judgment; and( 2) to serve this judgment upon receipt of a translated version from plaintiffs pursuant to 28 U.S.C. §§ 1608(a)(3) and (b)(3)(B).

It is **SO ORDERED**

SIGNED this ____ 1 8th ____ day of June, 2024.

                                                      Royce C. Lamberth
                                             United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ESTATE OF EITAM HENKIN,** *et al.,* | |
| *Plaintiffs,* | |
| v. | **Case No. 1:19-cv-1184-RCL** |
| **THE ISLAMIC REPUBLIC OF IRAN,** *et al.,* | |
| *Defendants.* | |

## MEMORANDUM OPINION

Before the Court is the Special Master's report and recommendations regarding damages in this case. ECF No. 76 ("Special Master Rep."). For the reasons stated below, the Court adopts each of the damages recommendations provided by the Special Master and awards a total of $52,049,000 in compensatory damages against the Defendants, jointly and severally. Additionally, the Court awards a total of $179,048,560 in punitive damages against all Defendants, jointly and severally, as detailed below.

## I.    BACKGROUND

This civil action arises from the attempted-kidnapping-turned-murders, by Hamas terrorists, of Eitam Henkin and Naama Henkin—in front of their four minor children—in Israel in 2015. While the Court is adjudicating two distinct civil actions arising from this attack—Case Nos. 18-cv-1273-RCL and 19-cv-1184-RCL—this Memorandum Opinion addresses the Special Master's report and recommendations regarding the Case 1184 plaintiffs.

Filed on April 24, 2019, the Complaint was brought under 28 U.S.C. § 1605A and Israeli law by the estates of the deceased victims and their children seeking compensatory and punitive damages. ECF No. 1. Plaintiffs served defendants Bank Markazi Jamhouri Islami Iran ("Bank Markazi") and Bank Saderat Iran ("Bank Saderat") via USPS Registered Mail on June 19, 2019. ECF Nos. 14 and

16. Plaintiffs served defendant Bank Melli Iran ("Bank Melli") via USPS Registered Mail on June 20, 2019. ECF No. 15. Plaintiffs served defendants Islamic Republic of Iran ("Iran"), the Islamic Revolutionary Guard Corps ("IRGC"), and the Ministry of Intelligence and Security ("MOIS") through diplomatic channels on September 23, 2019. ECF No. 28. Lastly, Plaintiffs served defendant Syrian Arab Republic ("Syria") through diplomatic channels on January 12, 2020. ECF No. 32. Following the defendants' failure to respond, and upon affidavit by plaintiffs' counsel, the Clerk of Court entered default against six of the defendants on April 6, 2020. ECF Nos. 36–40. The Clerk entered default against the remaining defendant, Bank Saderat, on October 26, 2020. ECF No. 44.

On March 18, 2021, the plaintiffs filed a memorandum of proposed findings of fact and conclusions of law ("PFFCL") in support of their motion for default judgment as to defendants' liability for plaintiffs' injuries stemming from the murders of Eitam and Naama Henkin. Pls.' PFFCL as to the Liability of All Defs. to All Pls., ECF No. 56. Specifically, they asked this Court to: (1) find that defendants "provided material support to Hamas that is reasonably connected to the attack"; (2) hold defendants "jointly and severally liable to the Estate of Eitam Henkin" and "to the Estate of Naama Henkin and to the four minor Henkin children." *Id.* at 1.

On July 12, 2021, the Court issued a Memorandum Opinion, ECF No. 62, holding that "Defendants materially supported Hamas to effect the common goal of inflicting terrorism, were integrated in Hamas's terror policies, and deployed Hamas as agents." *Id.* at 24. Accordingly, the Court issued a Finding of Liability as to injuries sustained by the plaintiffs. ECF No. 63. Plaintiffs moved to appoint Deborah Greenspan as special master. ECF No. 64. This Court denied plaintiffs' motion on August 4, 2021, instead appointing Alan L. Balaran to serve as Special Master. ECF No. 65. Plaintiffs then moved for orders to seal the Special Master's report and to redact certain information concerning the Henkins' children from the Court's Opinion and Order. ECF No. 70. The Court granted plaintiffs' motion. ECF No. 71.

On June 14, 2024, the Special Master filed his report and recommendation with the Court regarding solatium, pain and suffering, and economic damages alleged by plaintiffs. ECF No. 76. The parties did not file any objections to the report and recommendations. *See* Fed. R. Civ. P. 53(f)(2) (allowing a party to "file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served").

Having established liability, this Court examines the Special Master's recommended damages awards for the plaintiffs identified in his report.

## II. DISCUSSION

Damages available under the FSIA "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). To demonstrate entitlement to damages, "a FSIA default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq*, 328 F.3d 680, 683–84 (D.C. Cir. 2003) (quoting *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980)). *See also* H.R. REP. No. 94-1487, at 26 (1976) (stating that 28 U.S.C. § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F[ed]. R. Civ. P."). For future damages, a plaintiff must demonstrate entitlement to a "reasonable certainty or a preponderance of the evidence," and prove damages by a "reasonable estimate." *Hill*, 328 F.3d at 684. For past losses, a plaintiff must "prove the *fact of injury* with reasonable certainty" yet need only "reasonably prove" the amount of damages. *Id.* at 684 (quoting *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997)).

Plaintiffs have amply demonstrated that defendants' commission of acts of completed extrajudicial killings and provision of material support and resources for such killings was reasonably certain to—and, indeed, was intended to—injure plaintiffs. *See Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

The Court has received and reviewed the recommendations of the Special Master and **ADOPTS**, without discussion, all facts found. *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). The Court will, however, discuss the instances where the Special Master has recommended that departures to the well-established solatium-damages framework articulated below, pain and suffering damages, and economic damages be granted. The Court will also discuss why an award of punitive damages is appropriate.

### A. Solatium Damages

Solatium damages are designed "to compensate persons for 'mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience . . . as well as the harm caused by the loss of the decedent's society and comfort.'" *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402–03 (D.D.C. 2015) (quoting *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25 (D.D.C. 2011)) (internal quotation marks and alterations omitted).

In *Estate of Heiser v. Islamic Republic of Iran*, this Court surveyed damages awarded to the family members of the deceased terrorism victims and determined that, based on averages, "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (D.D.C. 2006). This Court then established a framework whereby spouses of deceased victims receive approximately $8 million, parents receive $5 million, and siblings receive $2.5 million. *Id. See also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson*, 515 F. Supp. 2d at 51). Step-family members may similarly receive solatium damages awards consistent with the *Heiser* framework when they "were members of the victim's household" such that they were "viewed as the functional equivalents of family members." *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003).

When applying this framework, this Court is mindful that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that upward deviations may be warranted in the face of "evidence establishing an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27. "Decisions to deviate from the starting points provided by the *Heiser* framework are committed to the discretion of the particular court in each case[.]" *Id.* at 26. Any departures from the *Heiser* framework are generally small relative to the award specified by the developed framework, absent "circumstances that appreciably worsen" a claimant's "pain and suffering, such as cases involving torture or kidnapping." *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006). Conversely, downward departures may be appropriate where the evidence suggests that the relationship between the victim and his family members is attenuated, *Valore*, 700 F. Supp. 2d at 86, or where a claimant fails to "prove damages in the same manner and to the same extent as any other default winner." *Hill*, 328 F.3d at 683 (internal quotation marks and citation omitted).

All of the Special Master's awards for loss of solatium are grounded in sound evidentiary principles. *See generally* Special Master Rep. Because, however, in each instance the Special Master has recommended upward departures from the *Heiser* guidelines, the Court will briefly address the Special Master's recommendations.

The Special Master has recommended awarding an upward departure—$10 million—to each of the four Henkin children. *Id.* at 69. Under the *Heiser* framework, courts typically award valid claims brought by children up to $5 million. *Heiser*, 466 F. Supp. 2d at 269; *Fuld v. Islamic Republic of Iran*, No. 20-cv-2444 (RCL), 2024 WL 1328790, at *18 (D.D.C. Mar. 28, 2024). The

recommended $10 million awards thus amount to upward departures of 100 percent. The Court agrees with the Special Master that upward departures are appropriate here. Each of the Henkin children sat just inches away from their parents as they both were murdered, and each has experienced significant psychological trauma requiring medical treatment. *See* Special Master Rep. at 65–67 (describing medical professionals' analyses of the Henkin children). These are factors warranting upward departures. *See Thuneibat*, 167 F. Supp. 3d 22, 51 (D.D.C. 2016) (awarding an upward departure because the plaintiff was "present at the scene of the attack"); *Valore*, 700 F. Supp. 2d at 86 (explaining that a plaintiff's "suffering [was] particularly profound in light of the loss of both her brother and husband"); *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 118 (D.D.C. 2015) (awarding upward departures to plaintiffs in part because there existed "medical evidence show[ing] that each plaintiff experienced extraordinarily severe pain and suffering"); *Oveissi*, 768 F. Supp. 2d at 26–27 (stating that "medical proof of severe pain, grief or suffering on behalf of the claimant" and "circumstances surrounding the terrorist attack which made the suffering particularly more acute or agonizing" are "[f]actors pertinent to the determination of damage enhancements"). Therefore, the Court **ADOPTS** the Special Master's recommendation to award upward departures—$10 million in solatium damages—to each of the Henkin children.

### B. Pain and Suffering Damages

Plaintiffs here seek damages for pain and suffering. Assessing appropriate pain and suffering damages depends upon several factors. Plaintiffs who were killed in the attack giving rise to the cause of action cannot receive an award for pain and suffering if their death was instantaneous. *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000). Indeed, a court cannot award damages for pain and suffering if the plaintiff fails to prove that the decedent consciously experienced the time between an attack and her death. *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp.

2d 232, 244 (D.D.C. 2012). Courts typically award $1 million to a victim who only survives a few minutes to a few hours after after an attack. *See Elahi*, 124 F. Supp. 2d at 113.

The Special Master has recommended that the Estate of Eitam Henkin be awarded $4.75 million in pain and suffering damages. Special Master Rep. at 56. Because Eitam Henkin survived for a few minutes after initially being shot, his estate is subject to a baseline of $1 million in pain and suffering damages. *See Elahi*, 124 F. Supp. 2d at 113 (awarding $1 million in pain and suffering damages to the estate of a plaintiff whose "suffering lasted a very brief period of time"). The Special Master, however, recommended a substantial upward departure from this baseline because "during the brief time Eitam was alive during the attack, he experienced the incomparable anguish of apprehending not only his own impending death but the deaths of his wife, Naama, and their four children." Special Master Rep. at 54. Courts in this District, including this one, have awarded heightened pain and suffering damages for similar reasons. *See, e.g., Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 84 (D.D.C. 2017) (awarding $2.5 million in pain and suffering damages to a plaintiff who "fear[ed] guinfire she believed to be targeted at her and her child" and ultimately was present for her child's death); *Acosta v. Islamic Republic of* Iran, 574 F. Supp. 2d 15, 30 (D.D.C. 2008) (awarding $3.5 million in pain and suffering damages to a plaintiff who "was present at the time of the shooting and thus suffered her own emotional distress in the face of gunfire and as a result of having witnessed her husband's shooting firsthand"); *Hamen v. Islamic Republic of Iran*, 407 F. Supp. 3d 1, 7 (D.D.C. 2019) (explaining that "the fear and distress caused by knowing that one's death is imminent is a reasonable component of damages"). The Court agrees with the Special Master and therefore **ADOPTS**, without modification, the Special Master's recommended damage award for pain and suffering.

The Special Master has also recommended that the Estate of Naama Henkin be awarded $4.75 million in pain and suffering damages. Special Master Rep. at 60. As with the pain and suffering

award for the Estate of Eitam Henkin, this recommendation is rooted in "the anguish she underwent, apprehending not only her own imminent demise but the deaths of Eitam and her four children." *Id.* at 59. As noted above, this award is consistent with the decisions of courts in this District. The Court agrees with the Special Master and therefore **ADOPTS**, without modification, the Special Master's recommended damage award for pain and suffering.

### C. Economic Damages

28 U.S.C. § 1605A, like its statutory predecessor 28 U.S.C. § 1605(a)(7), establishes a cause of action for economic damages resulting from an act of state-sponsored terrorism. "The report of a forensic economist may provide a reasonable basis for determining the amount of economic damages." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012). Before recommending the adoption of a forensic analysis, the Special Master must first examine the methodological soundness of the calculations, mindful that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020), and then examine "the reasonableness and foundation of the assumptions relied upon by the expert," *Roth*, 78 F. Supp. 3d at 402, to safeguard against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11. The need for scrutiny becomes enhanced for those claims implicating "[d]epartures from actual pre-injury earnings," as they "must be justified and cannot be unduly speculative." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 727 (6th Cir. 2012).

The Special Master has recommended that economic damages be awarded to the Estate of Eitam Henkin. Special Master Rep. at 70–71. The Special Master reviewed an appraisal of the present value of the economic life of this plaintiff prepared by Steven Wolf, an acknowledged expert in the field of forensic accounting. *Id.* at 71. The Estate of Eitam Henkin has proven to the satisfaction of the Special Master, and also to the satisfaction of this Court, the loss of accretions resulting from

this wrongful death. *Valore*, 700 F. Supp. 2d at 85. The Court therefore **ADOPTS**, without modification, the Special Master's recommended damage award for economic loss.

### D.    Punitive Damages

Finally, plaintiffs have requested an award of punitive damages. ECF No. 77. Punitive damages serve to punish and deter the actions for which they are awarded, rather than to compensate the victim. *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009). In determining the proper punitive damages award, courts evaluate four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Acosta*, 574 F. Supp. 2d at 30 (citing Restatement (Second) of Torts § 908). Though there was some confusion among circuits as to whether punitive damages were available in 28 U.S.C. § 1605A actions for conduct occurring prior to the statute's enactment, such as some of the attacks at issue in the instant case, the Supreme Court recently answered the question in the affirmative. *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1608 (2020) ("Congress was as clear as it could have been when it expressly authorized punitive damages under § 1605A(c) and explicitly made that new cause of action available to remedy certain past acts of terrorism.").

This District has developed three primary methods of calculating punitive damages in FSIA cases. The first, used more commonly in mass-casualty events, involves multiplying the foreign state's "annual expenditures on terrorism" by a factor between three and five. *See Valore*, 700 F. Supp. 2d at 87–88. The second approach awards a fixed amount of $150 million per affected family. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008). The third approach involves multiplying the total compensatory damages award by a factor of between one and five. *See Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 73 (D.D.C. 2015). The multiplier approach is especially appropriate when the defendants "did not directly carry out the attack, but funded [a proxy

actor], [and] it is doubtful whether a large amount . . . would have the deterrent effect that it might have had in times past." *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 28 (D.D.C. 2017) (quoting *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 26 (D.D.C. 2016)).

The nature of defendants' acts is heinous and the extent of the harm they caused is tragic. Defendants intentionally supported proxy actors who specifically sought to wreak particularly lethal injury on an innocent family. Nevertheless, the conduct here fits more squarely within the line of cases awarding punitive damages as a multiplier of compensatory damages. The Special Master has recommended that the Court determine punitive damages by applying a 3.44 multiplier to the compensatory damages. Special Master Rep. at 72. It is standard practice for the multiplier to range "between three and, in exceptional cases, five," *Roth v. Islamic Republic of Iran*, No. 14-cv-01946 (RCL), 2018 WL 4680270, at *17 (D.D.C. Sept. 28, 2018), and the plaintiffs have not offered a reason to depart from this practice. This Court agrees with the Special Master that the plaintiffs are entitled to punitive damages in the amount 3.44 times the compensatory damages—a multiplier this Court has applied many times—to be apportioned according to each plaintiff's share of the compensatory damages. *See, e.g., Estate of Brown v. Islamic Republic of Iran*, 872 F.Supp.2d 37, 45 (D.D.C. 2012) (awarding punitive damages equal to 3.44 times the compensatory damages); *Murphy*, 740 F. Supp. 2d at 82–83 (same); *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 17 (D.D.C. 2012) (same); *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011) (same).

### III.  CONCLUSION

The Court finds defendants responsible for the injuries sustained by the plaintiffs and thus liable under the FSIA's state-sponsored terrorism exception for $52,049,000.00 in compensatory damages and $179,048,560.00 in punitive damages, for a total award of $231,097,560.00.

A separate Order and Judgment consistent with these findings was entered on June 18, 2024. ECF No. 78.

SIGNED this 17th day of December, 2024

Royce C. Lamberth
United States District Judge