**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,
c/o U.S. Attorney's Office
601 D Street, NW
Washington, DC 20530

        Plaintiff,

    v.

$12,973,529 in funds on deposit at the U.S.
Treasury, Account No. ****8183,

        Defendant *In Rem*.

Civil Action No. 26-cv-802-DLF

**HENKIN CLAIMANTS' ANSWER**
**TO VERIFIED COMPLAINT *IN REM***

Pursuant to Rule G(5)(b) of the Federal Rules of Civil Procedure, the Henkin Judgment Creditors and Plaintiffs ("*Henkin* Claimants")[1] hereby answer the government's Verified Complaint *In Rem*, dated March 6, 2026, at ECF 1 as follows:

**NATURE OF THE ACTION**

1.      The *Henkin* Claimants admit that this is a forfeiture action concerning the Defendant Property.[2] Upon information and belief, the *Henkin* Claimants admit that the allegations in Paragraph 1 concern activities involving Iranian petroleum products and related entities. The *Henkin* Claimants deny that the United States has any right, title, or interest in the Defendant Property superior to that of the Henkin Claimants. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 1.

---

[1] A full list of the *Henkin* Plaintiffs is included as Exhibit B to the Verification of the Henkin Claimants claims. *See* ECF No. 12-2.

[2] As defined in the Verified Complaint, "Defendant Property" is the $12,973,529 on deposit with the U.S. Treasury in New York, NY at issue in this action.

1

2.      Upon information and belief, the *Henkin* Claimants admit that the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") sanctioned Mohammad Hossein Shamkhani and Ali Shamkhani, and that Ali Shamkhani has held senior positions within the Iranian government. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the truth of the remaining allegations in Paragraph 2.

3.      Upon information and belief, the *Henkin* Claimants admit that OFAC made the statements described in Paragraph 3 regarding the alleged activities of the Shamkhani network, including that it uses a vast network to launder billions of dollars in order to sell Iranian petroleum products. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 3.

4.      Paragraph 4 contains legal conclusions to which no response is required. To the extent a response is required, the *Henkin* Claimants deny that any of the authorities referenced confer on the United States any right, title, or interest in the Defendant Property that is superior to the right, title, or interest of the Henkin Claimants in the Defendant Property.

5.      Paragraph 5 contains legal conclusions to which no response is required. To the extent a response is required, the *Henkin* Claimants deny that any of the authorities referenced confer on the United States any right, title, or interest in the Defendant Property that is superior to the right, title, or interest of the Henkin Claimants in the Defendant Property.

6.      The *Henkin* Claimants admit that the Complaint purports to describe the Defendant Property as approximately $12,973,529 in funds on deposit at the U.S. Treasury.

7.      Upon information and belief, the *Henkin* Claimants admit that the Defendant Property includes funds associated with the wire transfers described in Paragraph 7. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 7.

2

**JURISDICTION AND VENUE**

8.      Paragraph 8 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the *Henkin* Claimants admit that this Court has jurisdiction but deny any implication that such jurisdiction establishes a superior right, title, or interest in favor of the United States.

9.      Paragraph 9 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegation that acts and omissions giving rise to the forfeiture occurred in the District of Columbia.

**LEGAL BACKGROUND**

10.      Paragraph 10 contains legal conclusions to which no response is required. To the extent a response is required, the *Henkin* Claimants admit that IEEPA is a federal statute that authorizes the imposition of economic sanctions as described in Paragraph 10.

A.      **SHAMKHANI Designations**

11.      Paragraph 11 characterizes an Executive Order that speaks for itself, and no response is required. To the extent a response is required, the *Henkin* Claimants admit that Executive Order 13902 was issued and that the Secretary of the Treasury made determinations as described.

12.      Upon information and belief, the *Henkin* Claimants admit that OFAC designated Mohammad Hossein Shamkhani and other individuals, entities, and vessels as described in Paragraph 12, and that such designations relate to activities involving the transportation and sale of Iranian petroleum products. The *Henkin* Claimants further admit that the statements attributed to OFAC were made as described.

3

13. Paragraph 13 contains legal conclusions to which no response is required.

**B.      Iranian Transactions and Sanctions Regulations**

14. Paragraph 14 characterizes an Executive Order that speaks for itself, and no response is required. To the extent a response is required, the *Henkin* Claimants admit that Executive Order 12170 was issued as described.

15. Paragraph 15 characterizes an Executive Order and Regulations that speak for themselves, and no response is required. To the extent a response is required, the *Henkin* Claimants admit that the Executive Orders and Regulations referenced in Paragraph 15 were issued and promulgated as described.

16. Paragraph 16 characterizes Regulations that speak for themselves, and no response is required. To the extent a response is required, the *Henkin* Claimants admit that the Iranian Transactions and Sanctions Regulations contain provisions as described in Paragraph 16.

17. Paragraph 17 characterizes Regulations that speak for themselves, and no response is required. To the extent a response is required, the *Henkin* Claimants admit that the regulations referenced in Paragraph 17 contain the provisions as described.

**FACTS GIVING RISE TO FORFEITURE**

**A.      Government of Iran**

18. Upon information and belief, the *Henkin* Claimants admit that the United States designated Iran as a state sponsor of terrorism as described in Paragraph 18 and that such designation remains in effect. The Henkin *Claimants* further admit that the statements attributed to the U.S. Department of State were made as described.

**B.      Iranian Oil Industry**

19. Upon information and belief, the *Henkin* Claimants admit that the Constitution of the Islamic Republic of Iran provides that the Iranian government owns and controls petroleum resources and major industries as described in Paragraph 19.

20. Upon information and belief, the *Henkin* Claimants admit that Iran's Oil Law provides that petroleum resources and related assets are owned and controlled by the Iranian government.

### 1. Ministry of Petroleum

21. Upon information and belief, the *Henkin* Claimants admit that Iran's Ministry of Petroleum is a state-run entity affiliated with the Iranian government and is responsible for the development and administration of Iran's oil and gas resources.

22. Upon information and belief, the *Henkin* Claimants admit that the Iranian Ministry of Petroleum exercises authority over the petroleum industry through state-owned entities, including the National Iranian Oil Company, and that such entities are responsible for the exploration, extraction, and sale of petroleum products.

23. Upon information and belief, the *Henkin* Claimants admit that the Iranian Ministry of Petroleum was designated by OFAC under Executive Order 13224, and that such designation relates to activities involving the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF"). The Henkin Claimants further admit that the statements attributed to OFAC were made as described in Paragraph 24.

### 2. National Iranian Oil Company

24. Upon information and belief, the *Henkin* Claimants admit that the National Iranian Oil Company is the national oil company of Iran, is a subsidiary of the Iranian Ministry of Petroleum, and is responsible for the exploration, production, and export of oil and gas.

25.     Upon information and belief, the *Henkin* Claimants admit that the U.S. Department of the Treasury reported to Congress that the National Iranian Oil Company was an agent or affiliate of the Islamic Revolutionary Guard Corps ("IRGC") and that the OFAC designated the National Iranian Oil Company pursuant to Executive Order 13224 as described. The *Henkin* Claimants further admit that such designation relates to activities involving the IRGC-QF and that the statements attributed to OFAC were made as described.

3.     Persian Gulf Petrochemical Industries Company

26.     Upon information and belief, the *Henkin* Claimants admit that OFAC took action against Persian Gulf Petrochemical Industries Company as described in Paragraph 26 and that such action relates to activities involving the IRGC or its affiliates. The *Henkin* Claimants further admit that the statements attributed to OFAC were made as described.

**C.     IRGC and IRGC-QF**

27.     Upon information and belief, the *Henkin* Claimants admit that the IRGC is a branch of the Iranian armed forces and that IRGC-QF is a branch thereof.

28.     Upon information and belief, the *Henkin* Claimants admit that OFAC designated the IRGC-QF and the IRGC pursuant to Executive Order 13224. The *Henkin* Claimants further admit that the statements attributed to OFAC were made as described.

29.     Upon information and belief, the *Henkin* Claimants admit that the President announced the designation of the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization as described in Paragraph 29.

30.     Upon information and belief, the *Henkin* Claimants admit that the State Department announced and the Secretary of State designated the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization as described in Paragraph 30.

31.     Upon information and belief, the *Henkin* Claimants admit that the statements attributed to OFAC in Paragraph 31 were made as described.

32.     Upon information and belief, the *Henkin* Claimants admit that the IRGC and IRGC-QF have been alleged by OFAC to use networks of intermediaries in connection with the sale of Iranian oil. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 32.

33.     Upon information and belief, the *Henkin* Claimants admit that the OFAC described the National Iranian Oil Company as an entity instrumental in Iran's petroleum and petrochemical industries as described in Paragraph 33. The *Henkin* Claimants further admit that Iran's petroleum and petrochemical industries are a significant source of revenue for the Iranian government. The *Henkin* Claimants further admit that the statements attributed to OFAC were made as described.

34.     Upon information and belief, the *Henkin* Claimants admit that the IRGC and IRGC-QF have been described by OFAC as generating revenue from the sale of petroleum products. The *Henkin* Claimants further admit that the statements attributed to OFAC in Paragraph 34 were made as described. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 34.

35.     Upon information and belief, the *Henkin* Claimants admit that OFAC has stated that crude oil and condensate associated with the IRGC-QF originate with the National Iranian Oil Company, and that vessels of the National Iranian Tanker Company have been used in operations associated with the IRGC-QF as described in Paragraph 35. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 35.

36.     Upon information and belief, the *Henkin* Claimants admit that Iran's petroleum and petrochemical industries have been described by OFAC as significant sources of revenue for the

Iranian government. The *Henkin* Claimants further admit that the statements attributed to the Department of the Treasury and OFAC in Paragraph 36 were made as described. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 36.

37.     Upon information and belief, the *Henkin* Claimants admit that Iran's petroleum exports have been described by the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") as a significant source of revenue for the Iranian government and that the National Iranian Oil Company has been described as playing a central role in the exploration, refining, and export of Iranian oil and petroleum products. The *Henkin* Claimants further admit that Iranian oil revenues have been described by FinCEN as being allocated to entities of the Iranian government, including military and related organizations, as described in Paragraph 37. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 37.

**D.     The SHAMKHANI NETWORK**

38.     Upon information and belief, the *Henkin* Claimants admit that Mohammad Hossein Shamkhani has been associated with various shipping and commodities-related business activities, including Iranian-origin petroleum. The *Henkin* Claimants otherwise lack knowledge sufficient to confirm or deny the allegations in Paragraph 38.

39.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 39.

40.     Upon information and belief, the *Henkin* Claimants admit that the SHAMKHANI NETWORK has been described as dealing with the National Iranian Oil Company, including by sourcing petroleum products originating from Iran. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 40.

41.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the specific relationships and conduct alleged in Paragraph 41.

42.     Upon information and belief, the *Henkin* Claimants admit that businesses in the SHAMKHANI NETWORK have been described as engaging in substantial transactions. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 42.

43.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 43.

44.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 44.

45.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 45.

46.     Upon information and belief, the *Henkin* Claimants admit that WELLBRED has been described as a Singapore-based company that holds itself out as a global energy and commodities trading company, as described in Paragraph 46. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 46.

47.     Upon information and belief, the *Henkin* Claimants admit that WELLBRED TRADING has been described as a subsidiary of WELLBRED organized in the Dubai Multi Commodities Centre, as described in Paragraph 47. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 47.

48.     Upon information and belief, the *Henkin* Claimants admit that the SHAMKHANI NETWORK has been described as being involved in business activities relating to the oil and petroleum industry and international maritime shipping, including commodities trading, shipping

and vessel management, and related services. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 48.

49. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 49.

50. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 50.

51. Upon information and belief, the *Henkin* Claimants admit that MILAVOUS GROUP LTD a/k/a MALVYN GROUP HOLDING LTD is a company that has been described as associated with the SHAMKHANI NETWORK and that it was designated by OFAC on or about July 30, 2025. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 51.

52. Upon information and belief, the *Henkin* Claimants admit that MAX ENERGY FUEL TRADING L.L.C. is a company that has been described as associated with the SHAMKHANI NETWORK and that it was designated by OFAC on or about July 30, 2025. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 52.

53. Upon information and belief, the *Henkin* Claimants admit that NEST WISE is a company that has been described as associated with the SHAMKHANI NETWORK and that it was designated by OFAC on or about July 30, 2025. The *Henkin* Claimants further admit that the statements attributed to OFAC were made as described. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 53.

54. Upon information and belief, the *Henkin* Claimants admit that DRACO BUREN SHIPPING PTE. LTD. and KOBAN SHIPPING L.L.C. are companies that have been described

as associated with the SHAMKHANI NETWORK and that they were designated by OFAC on or about July 30, 2025. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 54.

### E.     The Exchange House

55.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 55.

56.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 56.

57.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 57.

58.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 58.

59.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 59.

60.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 60.

### F.     WELLBRED

61.     Upon information and belief, the *Henkin* Claimants admit that Mohammad Hossein Shamkhani has been described as having acquired or exercised control over WELLBRED, as described in Paragraph 61.

62.     The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 62.

11

63.    Upon information and belief, the *Henkin* Claimants admit that Ocean Leonid Investments Ltd. has been designated by OFAC, as described in Paragraph 63. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 63.

64.    Upon information and belief, the *Henkin* Claimants admit that Alireza Derakhshan has been designated by OFAC and that the statements attributed to OFAC regarding him were made as described in Paragraph 64. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in Paragraph 64.

65.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 65.

66.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 66.

67.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 67.

68.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 68.

69.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 69.

70.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 70.

71.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 71.

72.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 72.

73.    The *Henkin* Claimants lack knowledge sufficient to confirm or deny the allegations in Paragraph 73.

**COUNT ONE - FORFEITURE**
**(Against Defendant Property; 18 U.S.C. § 981(a)(1)(A))**

74.    The *Henkin* Claimants incorporate and reallege each and every response to Paragraphs 1 through 73 set forth above as though set forth in full here.

75.    Paragraph 75 contains legal conclusions to which no response is required. To the extent a response is required, the *Henkin* Claimants deny that the Defendant Property is subject to forfeiture and deny that the United States has any right, title, or interest in the Defendant Property superior to that of the *Henkin* Claimants.

76.    Paragraph 76 contains legal conclusions to which no response is required. To the extent a response is required, the *Henkin* Claimants deny that the Defendant Property is subject to forfeiture and deny that the United States has any right, title, or interest in the Defendant Property superior to that of the *Henkin* Claimants.

77.    Paragraph 77 contains legal conclusions to which no response is required. To the extent a response is required, the *Henkin* Claimants deny that the Defendant Property is subject to forfeiture and deny that the United States has any right, title, or interest in the Defendant Property superior to that of the *Henkin* Claimants.

**COUNT TWO - FORFEITURE**
**(Against Defendant Property; 18 U.S.C. § 981(a)(1)(G)(i))**

78.    The *Henkin* Claimants incorporate and reallege each and every response to Paragraphs 1 through 77 set forth above as though set forth in full here.

79.     Upon information and belief, the *Henkin* Claimants admit that the Islamic Revolutionary Guard Corps and the IRGC-QF have been designated by the United States as foreign terrorist organizations, as described in Paragraph 79.

80.     Upon information and belief, the *Henkin* Claimants admit that the United States Government has described the IRGC and IRGC-QF as having engaged in terrorism-related activities, including those referenced in Paragraph 80. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in paragraph 80.

81.     Upon information and belief, the *Henkin* Claimants admit that the United States, including through Executive Order 13224, has designated the National Iranian Oil Company as having provided support to the IRGC-QF, as described in Paragraph 81. The *Henkin* Claimants lack knowledge sufficient to confirm or deny the remaining allegations in paragraph 81.

82.     Paragraph 82 contains legal conclusions regarding forfeiture to which no response is required. To the extent a response is required, the *Henkin* Claimants deny that the Defendant Property is subject to forfeiture and deny that the United States has any right, title, or interest in the Defendant Property superior to that of the *Henkin* Claimants.

83.     Paragraph 83 contains legal conclusions regarding forfeiture to which no response is required. To the extent a response is required, the *Henkin* Claimants deny that the Defendant Property is subject to forfeiture and deny that the United States has any right, title, or interest in the Defendant Property superior to that of the Henkin Claimants.

84.     Paragraph 84 contains a request for relief to which no response is required. To the extent a response is required, the *Henkin* Claimants deny that the United States is entitled to the relief sought and deny that the United States has any right, title, or interest in the Defendant Property superior to that of the *Henkin* Claimants.

**AFFIRMATIVE AND OTHER DEFENSES**

The defenses asserted herein are based on the *Henkin* Claimants' knowledge, information, and belief at this time. The *Henkin* Claimants specifically reserve the right to assert additional affirmative defenses and other defenses and/or modify, amend, or supplement any defense contained herein at any time. The *Henkin* Claimants' responses are made without prejudice to, and do not waive, the claims and assertions set forth in their Verified Claim, including their contention that the Defendant Property constitutes blocked assets of Iran or its agencies or instrumentalities and that the Henkin Claimants hold a superior interest therein pursuant to TRIA. Without admitting any of the facts alleged in the Complaint except as specifically set forth above, and without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of the government's claims, the *Henkin* Claimants assert the following affirmative and other defenses:

1. The Defendant Property constitutes property that is blocked pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, and applicable executive orders and regulations, including but not limited to Executive Order 13599, upon entering or transiting the United States.

2. The Defendant Property is a blocked asset of a terrorist party, Iran.

3. The Defendant Property constitutes blocked assets of an agency or instrumentality of a terrorist party, including the Shamkhani Network and its affiliated entities, which function as agencies or instrumentalities of Iran within the meaning of TRIA.

4. Pursuant to TRIA, the *Henkin* Claimants, as judgment creditors of the Islamic Republic of Iran, hold an interest in the Defendant Property that is superior to any interest asserted

by the United States or any other non-TRIA claimant, notwithstanding any other provision of law, including but not limited to the civil forfeiture statutes invoked in the Complaint.

5.     The *Henkin* Claimants are entitled under TRIA to attach and execute upon the Defendant Property to satisfy their outstanding compensatory damages judgment against Iran, including post-judgment interest.

6.     TRIA's "notwithstanding any other provision of law" clause supersedes and takes priority over any conflicting statutory scheme, including the forfeiture provisions set forth in 18 U.S.C. § 981(a)(1)(A) and § 981(a)(1)(G), and therefore precludes the United States from obtaining the Defendant Property to the exclusion of the *Henkin* Claimants.

7.     The United States cannot establish any right, title, or interest in the Defendant Property that is superior to that of the *Henkin* Claimants.

8.     The Complaint fails to state a claim for forfeiture as against the *Henkin* Claimants to the extent it seeks to defeat or supersede the *Henkin* Claimants' statutory rights under TRIA.

9.     The Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. Because of their claim under TRIA, the *Henkin* Claimants have a property interest in the Defendant Property governed by the Fifth Amendment. As a result, forfeiting the Defendant Property to the government without "due process of law" would violate the *Henkin* Claimants' rights under the Fifth Amendment.

10.     The Fifth Amendment also provides "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Because of the *Henkin* Claimants' property interest in the Defendant Property, forfeiting that property to the government would result in a taking of their property without just compensation.

16

11.    The *Henkin* Claimants deny all allegations not expressly admitted herein and specifically reserve the right to amend this Answer, to raise additional defenses, cross-claims, and third-party claims not asserted herein as may be warranted by the revelation of information during further proceedings, and to pursue alternative remedies under civil forfeiture law.

Dated: April 29, 2026

Respectfully submitted,

   /s/ *Kevin L. Attridge*

Kevin L. Attridge (D.C. Bar No. 1012349)
STEIN MITCHELL BEATO & MISSNER LLP
2000 K Street, N.W. Suite 600
Washington, D.C. 20006
Tel: (202) 737-7777
Fax: (202) 296-8312
Kattridge@steinmitchell.com

*Counsel for Henkin Claimants*